UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **RONALD KEITH TURRENTINE,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 4:20-CV-00567-RDP |
| } | |
| **KILOLO KIJAKAZI, Acting Commissioner of** } | |
| **Social Security,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OF DECISION

Plaintiff Ronald Keith Turrentine brings this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claims for Supplemental Security Income ("SSI"). *See also*, 42 U.S.C. § 1383(c). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

Plaintiff filed his application for SSI on May 1, 2017, alleging disability beginning on February 14, 2017. (Tr. 110, 214). Plaintiff's application was initially denied by the Social Security Administration. (Tr. 145). On September 21, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 152). Plaintiff's request was granted and on April 10, 2019 a hearing was held before ALJ Mary E. Helmer in Birmingham, Alabama. (Tr. 75-108). Vocational Expert ("VE") Renee Smith was in attendance during the hearing and testified. (Tr. 104-07). In her decision dated April 29, 2019, the ALJ determined that Plaintiff had not been under a disability within the meaning of § 1614(a)(3)(A) of the Act since May 1, 2017, the

date his application was filed. (Tr. 22). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

At the time of the hearing, Plaintiff was 50 years old and had a tenth-grade education. (Tr. 79, 234). Plaintiff was enrolled in special education classes while in school and had experience working as a stock/cleanup laborer. (Tr. 234, 462). Plaintiff alleges that he has been disabled since February 14, 2017 because of depression, anxiety, pain, shortness of breath, and high blood pressure. (Tr. 214, 233).

The record indicates that beginning in January 2016, Plaintiff regularly received treatment for depression and anxiety from CED Mental Health Center ("CED"). (Tr. 375). Treatment notes from August 2016 list major depressive disorder, ethanol abuse in remission, hypertension, and osteoarthritis as Plaintiff's problems. (Tr. 370). Plaintiff attended therapy sessions and reported that his medications were helping. (Tr. 369-70, 372, 374, 377-78). Therapy notes from CED indicate that Plaintiff's "[i]nsight and judgment are fair." (Tr. 370, 373).

Plaintiff also received treatment from Quality of Life Health Services, which began in September 2013 when he presented with complaints of hypertension. (Tr. 333). Treatment records indicate that Plaintiff tested positive for anxiety and depression in his psychiatric examination. (Tr. 344). Records also indicate that Plaintiff was "[o]riented to time, place, person [and] situation." (Tr. 346, 360).

In June 2017, Dr. Martha Kennon performed a consultative psychological evaluation on referral by the Disability Determination Service. (Tr. 398). Plaintiff reported to Dr. Kennon that his disabilities included depression, anxiety, shortness of breath, injuries from an accident, and

issues with his left shoulder. (*Id.*). Dr. Kennon noted that Plaintiff had a significant substance abuse history, including smoking a pack of cigarettes every 2-3 days and drinking throughout the week. (Tr. 399). Dr. Kennon's evaluation reports that Plaintiff has normal thought processes and that he was able to remember basic information such as family birthdays. (Tr. 400). Dr. Kennon also noted that Plaintiff may not be able to remember instructions, sustain concentration, persist in a work-related activity at a reasonable pace, maintain effective social interaction with supervisors and co-workers, or deal with normal pressures in a competitive work setting. (*Id.*). Ultimately, Dr. Kennon diagnosed Plaintiff with recurrent, moderate, major depression, and issues with his legs and left shoulder. (Tr. 401). The ALJ found the opinion of Dr. Kennon not persuasive as the record as a whole did not show limitation to the degree opined by Dr. Kennon. (Tr. 20).

Plaintiff also received a consultative examination from Dr. Jimmy Oguntuyo after a referral by the Disability Determination Service in June 2017. (Tr. 403). Plaintiff reported that his left shoulder and lower back pain were worsening. (*Id.*). Dr. Oguntuyo reported that Plaintiff "use[d] a walking cane for support, stability, and mobility," but that the walking cane was non-prescribed. (*Id.*). Plaintiff was "able to heel walk, toe walk, and perform the squat and rise test." (Tr. 404). Additionally, the report indicates that Plaintiff was "oriented to time, place, person, and context . . . ." (*Id.*). Dr. Oguntuyo opined that Plaintiff "may not be able to perform any meaningful work related activities [involving] prolonged sitting, standing, walking, lifting, carrying, [or] handling objects" because of his shoulder pain. (Tr. 405). However, x-ray imagining of Plaintiff's left shoulder revealed "no significant degenerative changes of the shoulder joint proper." (*Id.*). The ALJ found the opinion of Dr. Oguntuyo not persuasive as his findings were inconsistent with the record as a whole. (Tr. 20).

In August 2017, Plaintiff was examined by Disability Determination Services consultants Drs. Lecroy Thomas and Thomas Amason. (Tr. 118, 122). Dr. Thomas found that Plaintiff suffered from the following moderate mental limitations: (1) understanding, remembering, or applying information; and (2) concentrating, persisting, or maintaining pace. (Tr. 117). Dr. Thomas further found that Plaintiff suffered from mild mental limitations, including interacting with others and adapting or managing oneself. (*Id.*). Dr. Amason performed a physical residual functional capacity assessment on Plaintiff. (Tr. 119-22). Dr. Amason opined that Plaintiff was able to occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds; should never climb ladders, ropes, or scaffolding but that he could climb ramps or stairs frequently; should be limited in reaching overhead with his left arm; and should avoid unprotected heights and hazardous machinery. (*Id.*). Dr. Amason ultimately found that Plaintiff could perform light work based on the seven strength factors of the physical residual functional capacity test. (Tr. 125). The opinions of Drs. Thomas and Amason were found to be partially persuasive by the ALJ. (Tr. 21).

Plaintiff's treating physician, Dr. Larry Scarborough, completed a physical capacities form in February 2019. (Tr. 459). In the physical capacities form, Dr. Scarborough noted that Plaintiff would: be "lying down, sleeping, or sitting with legs propped at waist level or above" for less than fifteen minutes in an eight-hour period as a result of his medical conditions; likely fail to report to work a total of three days in a thirty-day period due to his physical symptoms; and that Plaintiff's limitations existed back to May 1, 2017. (*Id.*). Dr. Scarborough also completed a mental health statement in February 2019. (Tr. 460). Although he believed Plaintiff could not maintain attention and concentration for a period of at least two hours, Dr. Scarborough opined that Plaintiff could understand, remember, and carry out simple instructions

in addition to interacting with supervisors. (*Id.*). Dr. Scarborough noted that Plaintiff would be off-task for ten percent of an eight-hour day and would miss five days in a thirty-day period as a result of his psychological symptoms. (*Id.*). Again, Dr. Scarborough opined that these limitations existed back to May 1, 2017. (*Id.*). The ALJ found both the physical capacities form and the mental health statement completed by Dr. Scarborough were not persuasive. (Tr. 20-21).

After the ALJ's denial of benefits, Plaintiff submitted to the Appeals Council a mental health source statement and comprehensive evaluation conducted by Dr. June Nichols in July 2019. (Tr. 2). In the mental health source statement, Dr. Nichols found the following: Plaintiff is able to understand, remember, and carry out simple instructions and interact with supervisors; he is unable to maintain attention, concentration, and pace for periods of two hours or greater; he would be off-task twenty-five to thirty percent of an eight-hour day; and he would miss work two to four days in a thirty-day period as a result of his psychological symptoms. (Tr. 68). The Appeals Council declined to consider Dr. Nichols' mental health source statement because the statement did not show a reasonable probability that it would change the outcome of the decision. (Tr. 2).

In the comprehensive evaluation, Dr. Nichols noted that Plaintiff was oriented to person, place, time, and situation; his recent memory functions were grossly intact; he had an accurate general fund of knowledge; and his thought processes were within normal limits. (Tr. 70-71). Dr. Nichols acknowledged that Plaintiff's medical records dating back to April 2009 were reviewed in making a diagnostic impression, and a brief summary of those records is included in Dr. Nichols' evaluation. (Tr. 71-73). Dr. Nichols ultimately diagnosed Plaintiff with major depressive disorder, moderate alcohol use disorder, mild intellectual disabilities, hypertension, generalized degenerative osteoarthritis, chronic headaches, and chronic left shoulder pain. (Tr.

73-74). The Appeals Council declined to consider Dr. Nichols' comprehensive evaluation because it determined the additional evidence did not relate to the period at issue. (Tr. 2).

## II.     ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to

perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since May 1, 2017, the application date. (Tr. 15). Next, the ALJ found Plaintiff's depression and anxiety are severe impairments satisfying step two of the analysis. (*Id.*). The ALJ further found that Plaintiff had moderate limitations in the following categories: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (Tr. 17). However, the ALJ found that these impairments did not "meet[] or medically equal[] the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1," thereby not satisfying step three of the analysis. (Tr. 16).

After considering the record, the ALJ found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. 416.967(b). (Tr. 17). However, the ALJ noted the following limitations: Plaintiff should (1) not climb ladders, ropes or scaffolds, (2) not reach over head with the non-dominant left upper extremity, and (3) avoid unprotected heights and hazardous machinery. (*Id.*). The RFC assessment also included a finding that Plaintiff is limited to unskilled work with the ability to make simple work related decisions. (*Id.*). Finally, the ALJ determined that Plaintiff (1) should not have more than occasional work place changes, (2) can

attend and concentrate for two hour periods, (3) should have goal oriented work that is free from production pace or assembly pace, and (4) should not hold a job where contact with the general public is essential. (*Id*.).

Following the RFC assessment, the ALJ found that Plaintiff has no past relevant work. (Tr. 21). However, taking into account Plaintiff's age, education, work experience, RFC, and the VE's testimony, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 21-22). Therefore, the ALJ concluded that Plaintiff is not disabled as defined by the Act, and thus not entitled to a period of SSI. (Tr. 22).

### III.     Plaintiff's Argument for Reversal

The court has scrutinized Plaintiff's brief and determined that he has presented three arguments for reversing the decision of the ALJ. First, Plaintiff argues that the ALJ erred in finding the opinions of treating physician Dr. Larry Scarborough and of consultative examiners, Drs. Martha Kennon and Jimmy Oguntuyo, not persuasive. (Doc. #10 at 19, 23). Second, Plaintiff argues that the Appeals Council erred in failing to review the comprehensive evaluation conducted by Dr. June Nichols, which was submitted after the date of the ALJ decision. (*Id*. at 32). Finally, Plaintiff argues that the ALJ's decision is not based on substantial evidence because the ALJ relied on vocational expert testimony which was not based on a full statement of Plaintiff's limitations and impairments. (*Id*. at 34).

### IV.     Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42

U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V. Discussion

After carefully considering Plaintiff's arguments, the court concludes that the ALJ's decision was supported by substantial evidence for the following reasons.

### A. The ALJ's Failure to Explain How the Factors of Supportability and Consistency Were Considered in Dismissing Medical Opinions as Unpersuasive is Harmless Error

Plaintiff asserts that the ALJ erred in finding the opinions of Drs. Larry Scarborough, Martha Kennon, and Jimmy Oguntuyo were not persuasive. (Doc. #10 at 19, 23). In making this argument, Plaintiff cites numerous cases from the Eleventh Circuit and this court which were decided prior to March 27, 2017. (*Id*. at 21-23). As Defendant's Memorandum in Support of the

Commissioner's Decision notes, the Commissioner of Social Security issued revisions to the regulations which apply to claims filed on or after March 27, 2017.  (Doc. #11 at 6).  Because Plaintiff's claim for SSI was filed after the new regulations were put in place, (*i.e.*, on May 3, 2017), these new regulations apply in Plaintiff's case.

The Commissioner's revisions to the regulations include changes related to how much weight the ALJ is required to give to any medical opinion.  Following the revisions, ALJ's are not required to give "any specific evidentiary weight" to any medical opinion, including opinions from the claimant's own medical sources.  20 C.F.R. § 416.920c(a).  Rather, the ALJ considers the following factors in determining what evidentiary weight should be given to a medical opinion: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other facts such as the medical source's familiarity with other evidence in the claim.  *Id*. § 416.920c(c).  In explaining how the ALJ made her decision regarding the persuasiveness of a medical opinion, the ALJ is only required to explain how she considered the supportability and consistency factors.  *Id*. § 416.920c(b)(2).

In examining the medical opinions of Drs. Larry Scarborough, Martha Kennon, and Jimmy Oguntuyo, it appears that the ALJ did not adequately explain how she considered the supportability and consistency factors as required by the new regulations.  However, any such error is harmless when a correct application of the regulations would not contradict the ALJ's findings.  *Mills v. Astrue*, 226 Fed. App'x. 926, 931 (11th Cir. 2007).  For the reasons discussed below, the court finds the ALJ's failure to explain how she considered the factors of supportability and consistency was harmless error.

### 1.     The ALJ's Failure to Explain How it Considered the Supportability of Dr. Larry Scarborough's Medical Opinions is Harmless Error

In his physical capacities form, Dr. Scarborough opined that Plaintiff would be off task for about 20% of the workday and would miss about three days of work each month because of Plaintiff's left shoulder. (Tr. 459). The ALJ explained that Dr. Scarborough's findings were inconsistent with objective imaging of Plaintiff's left shoulder in Exhibit B6F, as that imaging showed no significant degenerative changes. (Tr. 21, 405). However, the ALJ failed to address the supportability of the opinion based on the record as a whole as required by 20 C.F.R. § 416.920c(b)(2). Even so, the fact that objective imagining of Plaintiff's left shoulder reveals no significant degenerative changes indicates that Dr. Scarborough's opinions regarding Plaintiff's physical capacities is not supported by the record as a whole. (Tr. 408). Therefore, any error here was harmless because it is readily apparent that the same conclusion regarding Dr. Scarborough's physical capacities form would have been reached had the ALJ explained how it considered the supportability factor. *See Mills*, 226 Fed. App'x. at 931 ("when an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.") (citing *Diorio v. Heckler,* 721 F.2d 726, 728 (11th Cir. 1983)).

In examining Dr. Scarborough's mental health statement, the ALJ explained why his findings were inconsistent with the record as a whole. (Tr. 21). Specifically, the ALJ noted that Dr. Scarborough's opinion as to Plaintiff's mental limitations was inconsistent with treatment notes in Exhibit B3F, which indicates that Plaintiff denied side effects of medication. (Tr. 21). However, the ALJ again failed to address the supportability of the opinion based on the record as a whole as required by 20 C.F.R. § 416.920c(b)(2). However, the court again finds this to be harmless error. Dr. Scarborough determined that Plaintiff was unable to attend and concentrate

11

for periods of at least two hours and was likely to miss five days of work each month. (Tr. 460). On the contrary, treatment notes show that Plaintiff has fair attention, judgment, and insight and that his short-term and long-term memory are intact. (Tr. 370, 385, 424, 428). Thus, Dr. Scarborough's opinion is not supported by the record as a whole and the court finds harmless error because the same conclusion regarding Dr. Scarborough's mental health statement would have been reached had the ALJ explained how it considered the factor of supportability. *See Mills*, 226 Fed. App'x. at 931.

> **2. The ALJ's Failure to Explain How it Considered the Supportability and Consistency of Dr. Martha Kennon and Dr. Jimmy Oguntuyo's Medical Opinions is Also Harmless Error**

Turning to the opinion of Dr. Martha Kennon, the ALJ discussed Dr. Kennon's findings in the consultative psychological evaluation and stated that they were "not persuasive as the record as a whole does not show limitation to the degree opined" in the evaluation. (Tr. 20). Despite not expressly discussing the factors of consistency and supportability, the ALJ's finding that Dr. Kennon's opinion is not persuasive is in line with and supported by substantial evidence in the record as a whole. Dr. Kennon opined that Plaintiff may not remember instructions, sustain concentration, or maintain effective social interaction. (Tr. 400). However, these opinions are inconsistent and unsupported by the record evidence. Treatment notes indicate that Plaintiff's short-term and long-term memory are intact. (Tr. 370, 385, 424, 428). The record evidence also indicates that Plaintiff's attention and concentration are adequate. (Tr. 456, 527). Finally, treatment notes show that Plaintiff sits comfortably, makes good eye contract, and speaks clearly. (Tr. 370, 385, 423, 428). Therefore, the court finds harmless error here because the same conclusion regarding Dr. Kennon's consultative psychological evaluation would have

been reached had the ALJ explained how it considered the factors of consistency and supportability. *See Mills*, 226 Fed. App'x. at 931.

Finally, the ALJ analyzed the consultative examination conducted by Dr. Jimmy Oguntuyo. (Tr. 20). Dr. Oguntuyo opined that Plaintiff needed a walking cane for support, stability, and mobility. (Tr. 405). The ALJ stated that Dr. Oguntuyo's findings are "not consistent with the record as a whole." (Tr. 20). Specifically, the ALJ noted that the record as a whole does not support a conclusion that a cane was prescribed or needed. (*Id.*). Additionally, the ALJ notes that Plaintiff did not use a cane during his hearing. (*Id.*). Despite not addressing the supportability of Dr. Oguntuyo's opinion, the complete absence of any evidence in the record of a prescription for a walking cane indicates that Dr. Oguntuyo's opinion is not supported by the record as a whole. Therefore, the court again finds harmless error because the same conclusion regarding Dr. Oguntuyo's consultative examination would have been reached had the ALJ explained how it considered the factor of supportability. *See Mills*, 226 Fed. App'x. at 931.

### B. Plaintiff Has Failed to Properly Explain How the Appeals Council Erred in Refusing to Consider the Medical Opinion of Dr. June Nichols

Under current regulations, the Appeals Council reviews a case when it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 416.1470(a)(5). Plaintiff argues that the Appeals Council erred in failing to review the comprehensive evaluation conducted by Dr. June Nichols, which was submitted after the date of the ALJ decision. (Doc. #10 at 32). In its denial of Plaintiff's request for review, the Appeals Council determined that the comprehensive evaluation did not affect the decision about whether Plaintiff was disabled because the additional evidence did not relate to the time period at issue. (Tr. 2). To be sure, the Appeals Council did find the

exam was not chronologically relevant. But any error in that determination was harmless because the Appeals Council considered as time relevant Dr. Nichols' mental health source statement, which was based on that exam. The Appeals Council determined there was no reasonable probability it would change the outcome of the decision, and it was merely cumulative of other evidence already of record, and therefore not new or likely to change the result. (Tr. 2). *See Clough v. Soc. Sec. Admin., Comm'r*, 636 F. App'x 496 (11th Cir. 2016).

With few exceptions, a claimant is allowed to present new evidence at each stage of the administrative process, including before the Appeals Council. *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015). The Appeals Council must consider evidence that is "new, material, and chronologically relevant." *Id*. A physician's opinion can be chronologically relevant even if the physician "examined [the claimant] . . . after the ALJ's decision[,]" *id.*, at 1322, so long as the examination "relate[s] back to a time on or before the ALJ's decision." *Hunter v. Soc. Sec. Admin., Comm'r*, 705 Fed. App'x. 936, 940 (11th Cir. 2017). For an opinion to relate back to the relevant time period, the physician must base their conclusions on evidence from that time period, including the claimant's medical records. *Washington*, 806 F.3d at 1322.

Here, Dr. June Nichols' comprehensive evaluation is dated July 17, 2019, almost two months after the ALJ's decision. (Tr. 10, 69). However, Dr. Nichols' evaluation is based in part on conclusions drawn from evidence from the relevant time period, including Plaintiff's medical records dating back to April 2009. (Tr. 71-73). Therefore, Dr. Nichols' comprehensive evaluation is chronologically relevant despite the fact that it was conducted after the date of the ALJ's decision. *See Washington*, 806 F.3d at 1322; *Hunter*, 705 Fed. App'x. at 940.

Despite all this, Plaintiff has not specifically argued that the evaluation done by Dr. Nichols is chronologically relevant. (Doc. #10 at 32-33). Plaintiff merely states in an argument heading that the evaluation is new, material, and chronologically relevant. (*Id*. at 32). He cites Eleventh Circuit cases holding that additional evidence obtained after the ALJ's decision *may* be considered by the Appeals Council, *see Washington*, 806 F.3d at 1317; *Hunter*, 705 Fed. App'x. at 935, but fails to explain why the additional evidence in this case *should* have been considered by the Appeals Council. (Doc. 10 at 32-33). Therefore, remand is not appropriate on these grounds because Plaintiff has not shown that the Appeals Council erroneously refused to consider the comprehensive evaluation conducted by Dr. Nichols. *See Bailey v. Soc. Sec. Admin., Comm'r*, 782 Fed. App'x. 838, 845 (11th Cir. 2019) (holding that a claimant who failed to explain why medical records were chronologically relevant had not shown that the Appeals Council erroneously refused to consider the records and, therefore, was not entitled to a remand). Indeed, contrary to Plaintiff's assertions, the record shows that the Appeals Council properly considered Dr. Nichols' health statement that Plaintiff submitted. And, in any event, those portions of Plaintiff's submission not considered by the Appeals Council (*i.e.*, Dr. Nichols' exam) show Plaintiff had a normal mood and appropriate affect, but poor mental processing speed, his recent memory was intact, good judgment and insight, and thought process within normal limits. (Tr. 70-71). Dr. Nichols opined Plaintiff would have a great deal of difficulty in any type of work setting, specifically difficulty with tasks and the interpersonal aspects of a job and any documentation requirements. (Tr. 73). He also opined Plaintiff would have highly impaired ability to withstand pressure of day-to-day job functions. (*Id*.). These opinions are similar to that provided by Dr. Kennon, which the ALJ found was not persuasive.

### C. The ALJ's Hypothetical to the Vocational Expert Properly Addressed Plaintiff's Mental Limitations Which are Supported by the Record

Finally, Plaintiff argues that the ALJ's decision is not based on substantial evidence because the ALJ relied on VE testimony which was not based on a full statement of Plaintiff's limitations and impairments. (Doc. #10 at 34). In making this argument, Plaintiff alleges that in her hypothetical the ALJ did not fully state Plaintiff's mental impairments and limitations. (*Id*. at 34-35). Plaintiff does not specify which mental impairments or limitations the ALJ omitted from the hypothetical, but merely states that the hypothetical question "did not fully state [Plaintiff]'s mental impairments and limitations." (*Id*. at 35). Presumably, Plaintiff's argument is that the ALJ erred in excluding his mental impairments and limitations which Plaintiff's counsel posed in the hypotheticals on cross-examination of the VE. These mental impairments and limitations include the following: (1) Plaintiff is unable to remember even simple instructions; (2) Plaintiff is unable to interact with either coworkers or supervisors; and (3) Plaintiff is unable to maintain attention, concentration, persistence or pace for any period of two hours or greater. (Tr. 106-07). Plaintiff's contention is supported by the fact that the ALJ's decision included moderate limitations in the following categories: (1) understanding, remembering, or applying information; (2) interacting with others; and (3) concentrating, persisting, or maintaining pace. (Tr. 17).

In order for the VE's testimony to be considered substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). The ALJ's hypothetical questions addressed two of the mental impairments or limitations which the court believes Plaintiff argues are not included. First, the ALJ's hypothetical addressed Plaintiff's moderate limitation in interacting with others. (Tr. 105). After the initial hypothetical, the ALJ included an additional limitation

16

that "contact with the general public is not a part of the job duties," to which the VE stated the same jobs would be available to Plaintiff. (*Id.*). The ALJ's hypothetical also addressed Plaintiff's moderate limitation in concentrating, persisting, or maintaining pace.  In the initial hypothetical, the ALJ included the limitation that Plaintiff would only have "[t]he ability to attend and concentrate for two-hour periods." (*Id.*). In the additional limitations following the first hypothetical, the ALJ included the limitation that Plaintiff would be "precluded from production pace or assembly line pace work . . . ." (*Id.*).  Again, the VE stated that the same jobs would be available to Plaintiff.  (*Id.*).  For these reasons and based upon this record evidence, the ALJ rejected the opinion of Dr. Kennon, which would otherwise have produced support for Plaintiff's proposed alteration to the hypothetical question posed.  Therefore, Plaintiff's contention that the ALJ's hypothetical did not address his limitations in interacting with others and in concentrating, persisting, or maintaining pace is unfounded.

The issue here is whether the ALJ's omission of Plaintiff's moderate limitation in understanding, remembering, or applying information in the hypothetical is reversible error.  An ALJ is "not required to include findings in the hypothetical that the ALJ ha[s] properly rejected as unsupported." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).  Here, the ALJ's opinion, citing to Exhibit B5E, notes that Plaintiff reported that his conditions affected his understanding and memory. (Tr. 17, 261). However, the ALJ properly rejected Plaintiff's contention as unsupported. The ALJ cited to treatment notes in Exhibit B4F indicating that Plaintiff's long-term and short-term memory is intact.  (Tr. 17, 385, 388).  Also, treatment notes throughout the record support the fact that Plaintiff's short-term and long-term memory is intact. (Tr. 370, 424, 428). The ALJ also cited to treatment notes in Exhibit B7F classifying Plaintiff's memory as normal. (Tr. 17, 413). For these reasons, and based upon this record evidence, the

ALJ rejected the opinion of Dr. Kennon, which would otherwise have provided support for Plaintiff's proposed alteration to the hypothetical question posed.  Therefore, the omission of Plaintiff's moderate limitation in understanding, remembering, or applying information from the hypothetical question posed to the VE is not grounds for remand because the ALJ properly rejected the limitation as unsupported.  *See Crawford*, 363 F.3d at 1161 ("the ALJ [is] not required to include findings in the hypothetical that the ALJ ha[s] properly rejected as unsupported.").

## VI. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination.  The Commissioner's final decision is therefore due to be affirmed.  A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this August 5, 2021.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE